[No. 13126.   In Bank.—February 14, 1891.]

ALHAMBRA ADDITION WATER COMPANY, RESPONDENT, *v.* E. L. MAYBERRY, APPELLANT.

WATER RIGHTS—PUBLIC LANDS—DIVISION OF STREAM BY OCCUPANTS—
VALIDITY OF CONTRACT. — The sole occupants of lands bordering upon a
stream which, after leaving the lands of the occupants, flows upon lands
belonging to the government of the United States, have the right to ap-
propriate the entire stream for any beneficial purpose, and may make a
lawful contract dividing the entire flow between themselves.
ID. — RIPARIAN RIGHTS — SUBORDINATION TO CONTRACT. — If, after making
the contract for division of the flow of the stream, an occupant of land
bordering on the stream, or his successor in interest, acquires title to
other land below on the stream, his riparian rights are subordinated to

the rights granted to the occupant of the lands above him, and if his successor in interest claims any rights under the contract, he cannot claim any riparian rights inconsistent therewith.

Id. — Construction of Contract. — The contract in this case construed, and held to indicate the intention of the parties to divide between themselves the entire flow of the stream.

Id. — Deed — Reservation — Right to Develop Water. — A reservation of water rights acquired by the owner of land under a contract for the division of the flow of a stream, made in a grant of part of the land, does not entitle the grantor to develop water on the land granted, by the digging of wells or the running of tunnels, or preclude the grantee from so developing water, so long as he does not interfere with or perceptibly diminish the flow of the stream.

Appeal from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Houghton, Silent & Campbell,* and *S. C. Denson,* for Appellant.

*Stephen M. White, Chapman & Hendricks,* and *Glassell, Smith & Patton,* for Respondent.

Beatty, C. J.— There is in the county of Los Angeles a natural stream issuing out of the Cañada del Molino, and called Mill Creek, which flows southward from the mouth of the cañada towards the town of Alhambra. In the year 1860, the land embracing the source of Mill Creek, and extending to and including the mouth of the cañada, belonged to B. D. Wilson. South of and adjoining the land of Wilson, and including the lower course of Mill Creek, was a tract of government land, embracing 154 acres, occupied by E. J. C. Kewen. Mill Creek flowed across this tract and upon other vacant land of the United States. In its ordinary stages, and in its natural condition, the stream flowed but a short distance below the land occupied by Kewen. In order to irrigate higher portions of his land and get a head for conducting water to his house under pressure, it was necessary for Kewen to divert water from the

stream on the lands of Wilson, and it was also con-
venient for Wilson to conduct a portion, at least, of the
water used by him in irrigation across the lands occu-
pied by Kewen.   Under these circumstances, Wilson
and wife on the one side, and Kewen and wife on the
other, entered into the following contract:—

"This indenture, made this seventh day of May, A. D.
1860, between Benjamin D. Wilson and Margaret, his
wife, of the first part, and Edward J. C. Kewen, and
Fannie, his wife, of the second part.   Whereas, the said
Benjamin D. Wilson is the owner of a certain tract of
land called the Rincon de San Pasqual, situate in the
county of Los Angeles, the boundaries of which are set
out and described and are known to the parties hereto;
and whereas there is a certain stream of water, which
takes its rise upon said tract of land and flows through
a glen, or cañada, called Cañada del Molino, or Mill
Stream, which glen is the glen which is in front of the
old mill formerly possessed by the mission of San Ga-
briel, and being upon the banks of a certain fresh-water
lake called Lake Vineyard, which stream, after passing
the said glen, flows over the boundary line of the said
tract of land called Rincon de San Pasqual, and on and
upon the lands outside thereof; and whereas the said
parties of the second part possess certain lands outside
of and bounding on said boundary lines, upon which
they are desirous of bringing the said water flowing in
said Mill Stream, to which the said Benjamin D. Wilson
is willing to consent in the manner and mode and for the
considerations hereinafter expressed.

" Now, therefore, this indenture witnesseth that the
parties of the first part, for and in consideration of the
grants and privileges to said Wilson hereinafter made,
and of the free, effective, and undisturbed enjoyment
thereof, have granted, released, remised, and conveyed,
and by these presents do grant, release, remise, and con-
vey, to the parties of the second part, the right of entry

for themselves and servants in, over, and upon those cer-
tain lands, being in the county of Los Angeles, and in
the tract of land called Rincon de San Pasqual, which
said tract of land has been finally surveyed by the United
States surveyor-general, which said certain lands are
those lying within and on the western side of the glen, or
cañada, called the Cañada del Molino, or Mill Stream,
the mouth whereof is to the northward of the old mill
formerly occupied by the mission of San Gabriel, near
the lake now called Lake Vineyard; and after entry
thereupon, the right of guiding and conducting for two
days in each week, commencing Friday and continuing
through Saturday, — that is, Friday and Saturday of
each week, — the water flowing in said glen, along the
western side, in the upper water-ditch now existing
therein, a portion whereof was dug and opened in the
fall of last year, together with the privilege of keeping
the same in repair, the right of digging earth therein,
and after guiding and conducting said water along said
ditch as aforesaid, the exclusive right to use and distrib-
ute the same for the purpose of irrigating their lands dur-
ing the said two days in each week.

"Provided, nevertheless, that when the said waters
shall not be used for the irrigation of the lands afore-
said, that then they shall be permitted to flow in the
manner and mode as directed by said Wilson.

"To have and to hold the said right of entry as afore-
said, and the privileges thereunto annexed, to the said
parties of the second part, or either of them, owner or
owners of the land now occupied by them, and to their
or his heirs forever.

"And the parties of the second part, for and in con-
sideration of the grant hereinbefore made, hath given,
granted, remised, and released and confirmed, and by
these presents do give, grant, remise, release, and confirm,
to said Benjamin D. Wilson, and his heirs and assigns, a
right of entry for himself and his servants in and upon

all the lands now occupied by them, called the Rancho del Molino, being the same tract of land hereinbefore referred to, for the purpose of opening new water-ditches upon and through the said lands, or of using those already opened, and for the purpose of erecting and building aqueducts or flumes, or of using those already erected, and of keeping the said water-ditches, flumes, or aqueducts in repair, and for these purposes the right to dig earth; also, the right of way in and upon said lands for the purpose of guiding and conducting said water as the said Wilson may desire or wish, through said water-ditches, flumes, or aqueducts now or to be opened or built upon or over the said lands, in such directions, along such levels, and in such manner and mode as may seem to him expedient and useful, but not so as to wantonly and uselessly injure them; the parties of the second part, and either of them, shall permit to flow except as hereinafter specified, without disturbance, diminution, or injury, through and over their said lands along the said water-ditches, flumes, or aqueducts, to such point or points outside thereof as the said Wilson may from time to time select; subject, nevertheless, to the right of the parties of the second part to use the water for irrigation of the said lands now occupied by them, flowing in the upper or higher ditch, or in any water-ditch, flume, or aqueduct used, dug, or erected by the said parties of the first part upon the lands of the parties of the second part, or either of them, as aforesaid, during the two days hereinafter specified, and subject to their further right to conduct so much of the water in the upper ditch at any time when it may be flowing therein, through a pipe two inches in diameter, as may be sufficient to fill the same, for the purposes of domestic use and for the playing of a fountain.

"And all the parties hereto mutually covenant to perform all the obligations herein contracted, and agree that the agreements and stipulations herein shall bind

as well themselves as their heirs, executors, and administrators and assigns.

"In witness whereof the parties to these presents have hereunto set their hands and seals the day and year first above written.   "B. D. WILSON.        [Seal.]
                                         "MARGARET WILSON.    [Seal.]
                                         "E. J. C. KEWEN.       [Seal.]
                                         "FANNIE KEWEN.        [Seal.]"

Subsequently, Kewen acquired the title to the government land occupied by him, and he also acquired fifty acres, including the mouth of the cañada, from Wilson, subject to a reservation of all water rights; and from different sources he acquired the lands along the course of the stream below and adjoining the land which he claimed and occupied at the date of the contract. All these lands and all his rights under the contract were thereafter sold and duly transferred to the defendant.

The plaintiff has acquired certain lands from Wilson, and succeeded to all his rights under the contract.

Both parties have continuously claimed and asserted, and in this action are claiming and asserting, the rights secured to their respective predecessors by the contract, and none other. But they differ widely as to its proper construction, and the defendant is using water at times and for purposes which the plaintiff contends are in excess of his rights, and injurious to it.

This action was brought to determine the respective rights of the parties in the waters of the stream. The superior court sustained the claims of the plaintiff, and made a decree declaring and establishing its rights, and enjoining the defendant from infringing the rights so established. Defendant appeals from the judgment, and from an order denying a new trial. The assignment of error principally relied on is, that the superior court gave an erroneous construction to the contract of May 7, 1860. But we think the court construed the contract according to the intention of the parties, as shown not

only by its terms, but by their subsequent action under it. They seem to have acted upon the assumption that they had a right to divide between themselves the entire flow of the stream, and their agreement, though inartificially drawn and most awkwardly expressed, clearly evinces that such was their intention. Nor can it be urged against this construction that it imputes to the parties an intention to do that which they had no right to do. For, so far as appears, they were at that time the sole occupants of the lands bordering the stream; and the lands through which it flowed after leaving the lands of Kewen belonged to the United States. Such being the case, they had a right to appropriate the entire stream for any beneficial purpose. Evidently they contemplated such an appropriation for the purpose of irrigating the land then in possession of Kewen, and, subject to the limited rights secured to him by the terms of their agreement, for the further purpose of irrigating any lands owned, or thereafter to be acquired, by Wilson, whether riparian to the stream or not.

There was nothing unlawful or improper in such an agreement, or in such appropriation and diversion of the water, as between themselves or as against the United States.

It was held by the superior court, correctly as we think, that by the contract Wilson and his successors acquired, as against Kewen and those claiming under him, the right to use all the waters of the stream and to divert the same to lands not riparian, subject only to the rights of Kewen, as defined by the contract; i. e., the right to use the entire flow of the stream on Friday and Saturday of each week for the irrigation of the land owned or occupied by him at the date of the contract, the right to maintain his ditch and divert the water on the land of Wilson, the right to draw water therefrom, whenever it might be flowing therein, for domestic purposes, and for playing a fountain, to the capacity of a

two-inch pipe, and the right to use the ditches, pipes, and works of Wilson, situated on his land, for the purposes of irrigation, on Fridays and Saturdays.

It was also correctly held by the superior court that Wilson, in his conveyance to Kewen of the fifty-acre tract, reserved all water rights then possessed by him, whether dependent on the contract or appurtenant to the land conveyed.

But it is contended by the appellant that since he has become the owner of the lands bordering on the stream below the land owned or occupied by Kewen at the date of the contract, he has, as a riparian proprietor, a right to insist upon his share of the waters of the stream for the irrigation of those lands, independent of and superior to any rights of any party under the contract.

But he cannot at the same time claim under the contract and against it. As above stated, the case shows that he, as well as his predecessor, Kewen, has always claimed and exercised the rights secured by the contract and wholly dependent upon it. In his answer in this case he makes no claim as a riparian owner, but relies on his construction of the contract. We do not see how he could maintain positions so inconsistent, even if his claim as a riparian owner was clearly well founded. But he seems to have acquired all his riparian land through Kewen. If this is so,—if Kewen, after entering into the contract with Wilson acquired title to the lands below him,—his riparian rights as owner of such land became subordinated to the rights he had granted to Wilson by the contract. At least it is certain he could not at the same time insist upon rights as a riparian owner inconsistent with the right he had. granted to Wilson, and at the same time claim and exercise rights granted by Wilson upon no other consideration than his own grant to him. He could not at the same time enjoy the benefits of his contract and repudiate its burden.

But, as we have seen, both Kewen and the defendant have always claimed under the contract, and to that they must look for a definition of their rights.

In one particular, however, the findings and the decree are unwarranted by the evidence, and by a proper construction of the contract and deed from Wilson to Kewen conveying the fifty-acre tract. It is found as a fact, and decreed accordingly, that plaintiff, as successor to Wilson, has a right to *develop* water on the fifty-acre tract, and that the defendant has no right to *develop* water thereon. We do not think that plaintiff has any such right, if by developing water is meant the digging of wells, running of tunnels, and the like. Nor do we think that the defendant is precluded, as successor of Kewen, either by the deed or contract, from digging wells, running tunnels, etc., on the fifty-acre tract for the purpose of obtaining water, so long as he does not thereby interfere with or perceptibly diminish the natural flow of the stream.

The decree of the superior court should be modified, so far as necessary, to bring it in harmony with these views.

The cause is remanded, with directions to the superior court to modify its decree accordingly, and as so modified it will stand affirmed, the appellant to recover costs of the appeal.

McFARLAND, J., SHARPSTEIN, J., DE HAVEN, J., and GAROUTTE, J., concurred.

PATERSON, J., dissenting. — I concur in the judgment in so far as it directs a modification of the decree, but am unable to concur with the majority in their construction of the contract between the Wilsons and the Kewens. I am unable to see in that contract an intention on the part of the parties thereto to convey or partition their water rights. The object of the contract was to secure water for the tract of land then owned by the

respective parties.   Wilson could not get it upon his land — portions of his land — without crossing the lands of Kewen.   Kewen could not get it upon certain portions of his land, which he desired to irrigate, without the use of the ditch he had constructed on Wilson's land. It seems that Wilson never used this ditch, but he could get water on his land lying east of Lake Vineyard by ditches, flumes, and aqueducts, through which to carry the water upon and across Kewen's land.   Each granted to the other an easement for the purpose of conducting the water upon his land.   In fixing the time each was to use the water, they did not necessarily convey any water right; and in the absence of an intention to do so clearly appearing in express and unequivocal terms, it should not be held that they did.

If a third person had purchased the land lying below the 154.32 acres owned by Kewen, he certainly would not have been bound by the contract between Wilson and Kewen.   He could have maintained his right to the use of the waters of the stream as a riparian proprietor, notwithstanding the fact that the stream had its source on the lands of Wilson.   (*Kidd* v. *Laird,* 15 Cal. 179; 76 Am. Dec. 472; *Nevada Co. & S. Co.* v. *Kidd,* 37 Cal. 311; *Gould* v. *Stafford,* 77 Cal. 68.)   As between themselves, of course, Wilson and Kewen could dispose of their water rights as they chose; but they could not affect the rights of lower proprietors, and I am unable to see how the defendant can be estopped from claiming the same right that any other purchaser of the land below the Kewen lands would have had as a riparian owner.   If he had owned the lower tract at the time the contract was entered into by Wilson and Kewen, or if he had purchased it before he purchased the Kewen tract, it does not seem to me that he would have lost his rights as a riparian owner of the first tract purchased simply because his second grantor had entered into the contract with Wilson.   I am at a loss to understand why he waived his

riparian rights as owner of the lower tract by purchasing the Kewen tract. When he purchased the lower tract he took with the grant all the right that any other grantee could have taken.

But, as stated before, it seems clear to me that the only object of the parties to the contract was to secure the right of way, each from the other, for conducting water across the land, — the agreement as to the time each was to use the water being a mere matter of convenience, — and the use of the water contemplated by the parties was confined to the lands then held by them. It may be, and doubtless is, true that the defendant is entitled to use the water on the Kewen tract only, in accordance with the terms of the contract between Wilson and Kewen, and that he would have no right to use the ditch or pipes located above for the purpose of conducting water upon the lower tract,— the tract below the land held by Kewen at the time the contract was made; but as to such lower tract, I think the defendant is entitled to use the water in the same manner as if no contract had ever been entered into between Wilson and Kewen, and as if defendant had never purchased the upper tract from Kewen.

The defendant did not in express terms set up his right as a riparian proprietor in the lower tract, and there may be a doubt as to whether such right has been litigated herein. If the issues and the decree do not cover the rights of the defendant as riparian owner of the tract below, regardless of the contract, what I have said is inapplicable to the case; but it seems to me that the decree determines all the rights of the defendant to the use of the water, without regard to any particular tract of land. I therefore dissent from that portion of the judgment which sustains in part the decree of the court below.

Rehearing denied.