[L. A. No. 367.  In Bank.—July 22, 1899.]

# E. L. MAYBERRY, Appellant, v. ALHAMBRA ADDITION WATER COMPANY, Respondent.

WATER RIGHTS—DIVISION OF STREAM—FUTURE DEVELOPMEMT OF WATER — AMBIGUOUS CONTRACT — PRACTICAL CONSTRUCTION.— Where the owner of land in which a stream arose contracted with an adjoining owner for a division of the stream so as to give to the latter, or his assigns, the right to the flow of the stream two days in each week through a certain ditch, or any other aqueduct conducted by the former, or his assigns, across the land of the latter, for which a right of way was given under the contract, to the former or his assigns, together with the right to the flow of the remainder of the stream, the possibility of the future development of additional water by the former, or his assigns, was a circumstance surrounding the parties, and the contract being ambiguous or doubtful in relation to water thus developed, the practical construction placed upon the contract by the parties in relation thereto must control.

ID.—USE OF DEVELOPED WATER UNDER TERMS OF CONTRACT—COMMINGLING—ESTOPPEL.—Where the owner of the land upon which the stream arose conducted the natural water and that artificially developed, commingled together, in an aqueduct constructed across the lands of the adjoining owner, thereby bringing the whole flow within the literal terms of the contract, he cannot claim that the flow of the developed water across such lands was without right and not under the contract.

ID.—ACQUIESCENCE OF PARTIES—RIGHT TO USE OF FLOW.—Both parties having acquiesced in the right to flow the developed water

across the adjoining lands under the contract, the adjoining owner or his grantee has the right to use it two days each week, as part of the flow of the stream, so long as it is so conducted, in so far as may be reasonably necessary for the irrigation of the original adjoining tract.

ID.—WANTON DIVERSION NOT ALLOWED.—The adjoining owner cannot make a wanton diversion of the water, to the injury of the other party, without benefit to himself.

ID.—RIGHT TO PERIODIC FLOW OF STREAM—MEASUREMENT.—Where a party has a contract right to the periodic flow of the water of a stream for two days in the week, he is entitled to the entire flow of the stream for the time specified, when necessary for the irrigation of his tract; and his rights in the stream cannot properly be measured by a fixed quantity thereof in inches. If he does not at present need or use all the flow of the stream, that fact does not authorize a restriction of his privileges under the contract.

ID.—ACQUIESCENCE IN MEASUREMENT.—The temporary acquiescence of such party in a measurement of his water right by inches by the other party to the contract, whatever effect it may have upon his claim for damages, cannot affect his rights under the contract, if not continued for a sufficient time to bar his rights by adverse user.

APPEAL—FINDINGS AND JUDGMENT TOO BROAD—REVERSAL.—Upon appeal, where the findings and judgment appear to be broader than the facts warrant, and they apparently cast a cloud on rights clearly belonging to the appellant, the judgment must be reversed.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinions in this case, and in the opinion of the court in the former case, reported in 88 Cal. 68.

Anderson & Anderson, Van R. Paterson, and Rodgers, Paterson & Slack, for Appellants.

A. M. Stephens, and Graves, O'Melveny & Shankland, for Respondent.

BEATTY, C. J.—A rehearing of this cause was ordered after decision in Department. We refer to the Department opinion for a statement of the facts to be considered, and we adopt its conclusions, except upon one point.

With respect to the rights of the parties to the use of the

water artificially developed by the defendant, we think the contract of 1860 (quoted in full in *Alhambra etc. Water Co. v. Mayberry,* 88 Cal. 68) requires a construction more favorable to the plaintiff than was placed upon it by the superior court and by the Department. When Kewen and Wilson entered into that contract, the possibility of developing in the future water in addition to that then flowing in the canada was one of the circumstances by which they were surrounded, and there is nothing in the terms of the contract to denote whether they did, or did not, take it into consideration. If, therefore, the defendant, by causing the water which it has developed to flow through the aqueduct which it maintains across the Kewen land, has brought such water within the literal terms of that clause of the contract which entitles the plaintiff to use on two days of the week "the water flowing in any water ditch, flume or aqueduct used, dug or erected by the parties of the first part," et cetera, we cannot see how the defendant can appeal to the circumstances surrounding the parties at the date of the contract to modify the natural construction of the language in which their intention is expressed.

But, aside from this, the least that can be said of this provision of the contract is that it is ambiguous and doubtful. Such being the case, the practical construction placed upon it by the parties must control.

It appears that the defendant, from the commencement of its development of water in 1887 down to the trial of this action, has been conducting all the water "flowing in the glen"—natural and artificial mingled together—through its pipe across plaintiff's land. It does not lie in defendant's mouth to say that it has been doing this without right, and its only right is derived from the contract of 1860. It has thus put its construction upon that contract, and the plaintiff having acquiesced, it must be held that the parties have themselves determined that the defendant has the right under the contract to conduct the developed water across the plaintiff's land. If so, it follows that the plaintiff has the right to use it on two days of the week, so long as it is so conducted. If one stipulation of the contract applies to the flow artificially created, so must the others. We do not decide that the defendant is obliged to continue to con-

duct the developed water across the Kewen tract, but only that
so long as it claims and exercises the right to do so the plaintiff
can claim and exercise the reciprocal right to use the water as
the contract provides.   Nor are we to be·understood as holding
that the plaintiff is entitled to divert from defendant's pipes
at any time more water than is reasonably necessary for the
irrigation of that portion of the original Kewen tract of which
he is the owner.   He is not, in other words, to make a wanton
diversion, to the injury of defendant without benefit to himself.

The judgment and order of the superior court are reversed,
and the cause remanded for further proceedings in accordance
with the opinion of the Department as herein modified.

Henshaw, J., Temple, J., and McFarland, J., concurred.

The following is the opinion rendered in Department Two,
September 10, 1898, referred to in the foregoing opinion:

BRITT, C.—In the year 1860 one B. D. Wilson owned a con-
siderable body of land, which included the source and upper
portion of the channel of a stream of water flowing in a can-
yon or glen on said land and called the Mill stream.   Adjacent on
the south to Wilson's land, and traversed by the lower course
of said stream, was a tract of public land, one hundred and
fifty-four acres in extent, occupied by one E. J. C. Kewen,
to which said Kewen afterward acquired title.   For the purpose
of apportioning the flow of said stream between themselves for
irrigation and other uses, the said Wilson and Kewen entered
into a written contract, of date May 7, 1860, whereby Wilson
granted to Kewen the right to enter on his, Wilson's, aforesaid
land on the west side of said canyon and take the water flow-
ing therein through a certain "upper water ditch" and use the
same for irrigating the land of him, the said Kewen, during
Friday and Saturday of each week; Kewen on his part granted
to Wilson the right of way over his said tract of one hundred
and fifty-four acres for the construction of ditches, flumes, and
aqueducts, and to conduct water through the same to such out-
side points as Wilson might select, subject to the right of Kewen
to use for irrigating his land, during two days in the week as
aforesaid, the water flowing in said "upper ditch, or in any water
ditch, flume or aqueduct used, dug, or erected" by Wilson on

Kewen's land. The contract in terms bound the assigns of the parties thereto. The Alhambra Addition Water Company, a corporation, defendant here, has succeeded by purchase to the lands of Wilson, including the upper part of said canyon, and to all his rights under said contract; in like manner Mayberry, the plaintiff, has acquired the interests of Kewen in the contract and the title to said one hundred and fifty-four acre tract of land, together also with a certain parcel of fifty acres lying north of Kewen's original tract, and at the mouth of said canyon, which was conveyed by Wilson to Kewen by deed on November 29, 1871. This deed reserved to Wilson all water rights had by him in the fifty-acre parcel.

Said contract of 1860, and a statement of the circumstances inducing the same, appear at length in the opinion of the chief justice rendered in a former action between the parties here and reported in *Alhambra etc. Water Co. v. Mayberry*, 88 Cal. 68. That action was begun by the water company (defendant in the present case) on April 18, 1886, against Mayberry (the present plaintiff), and had for its principal object the determination of the rights of the parties in the water which was the subject of said contract. The judgment of the superior court therein was rendered on December 28, 1887, in favor of the water company, it contained the following provisions among others: That Mayberry is entitled to divert and use, on Friday and Saturday of each week, all or so much as may be necessary, of the waters of said canyon for the purpose of irrigating, on those days only, any or all of the tract of one hundred and fifty-four acres formerly owned by Kewen. "Also the right to divert and use on said days, and for said purpose of irrigating said lands, any water flowing in any ditch, flume, or aqueduct made, constructed, or used by said Wilson . . . . or by the plaintiff . . . . over or across the said one hundred and fifty-four acre tract of land." That the water company is entitled to the exclusive use of the waters of said canyon, subject to the expressly specified rights of Mayberry; and that it has, and he has not, the right to develop water on that portion of the fifty-acre tract lying in said canyon. On appeal taken by Mayberry, this court affirmed the judgment, except in the particular last stated, as to which it was determined that Mayberry has the right to develop water

on the fifty-acre tract by digging wells, running tunnels, and the like, not interfering with the flow of the stream. (Alhambra etc. Water Co. v. Mayberry, supra.)

Pending said former action, viz., in July, 1887, the water company began a series of explorations for water on its own land in the said canyon above the holdings of Mayberry, and continued the same during the period of some five years, and by means of wells, tunnels, et cetera, it tapped sources of subterranean supply and conducted the same into the channel of said stream, thereby adding to the volume of the same a quantity of water which would not naturally flow therein at all; speaking approximately, and not meaning to decide the fact, the flow of the stream was in this manner about doubled. All the water when used by the water company is conducted through a large pipe laid across the said one hundred and fifty-four acre tract—the head of the pipe being above the northerly line of that tract and on the said fifty-acre parcel.

1. The present action was instituted by Mayberry on July 17, 1894. The main question involved is, whether he may use the water added to the stream as aforesaid in the same manner that he uses the natural flow; he claims that right both under the contract of 1860 and the judgment in said former action. The chief privilege secured to Kewen by said contract was the right to enter on Wilson's land and take on Fridays and Saturdays "the water flowing in said glen"; these words reasonably denote the then existing natural flow of the stream, and do not reasonably denote water to be in the future artificially developed or imported by Wilson or his assigns and turned into the channel. The right to the artificial increment is quite distinct from the title to the natural flow, and the owner thereof may reclaim it from the channel. (Butte Canal Co. v. Vaughn, 11 Cal. 143; 70 Am. Dec. 769; Paige v. Rocky etc. Canal Co., 83 Cal. 84.) It is true that after the description in the contract of the privileges accorded to Wilson of constructing conduits across the land of Kewen and leading water through them, there followed a clause reaffirming the right of Kewen to use for irrigation the water flowing in the upper ditch "or in any water ditch, flume, or aqueduct used, dug, or erected" on his land pursuant to the permission of the contract; but we understand this provision to

mean that Kewen might use the water whether flowing in the "upper ditch" (which then existed) or in some other aqueduct which Wilson or his successor might thereafter provide for its transmission to lower levels across Kewen's land, and had no reference to an extension of the right of Kewen to water other than that of the stream. Whether the water company has the right to convey the developed water in the pipe across plaintiff's land is a question which does not arise in this case; whether such use is rightful or not—a matter on which we intimate no opinion—the title to the water is not affected.

When said former action was begun the water now in controversy formed no part of the stream, but was as absolutely the property of the water company as were the solid strata through which it percolated or by which it was restrained from emerging in the channel (*Gould v. Eaton*, 111 Cal. 639, and cases cited); as we read the pleadings in that suit (which are brought up in the record here), they submitted for adjudication no issues concerning this water. There were some references in the complaint to the right to develop water, but, considered in their context, it is apparent that they were pointed to the acts of Mayberry on the fifty-acre tract—the water company claiming, in virtue of the reservation of water rights in the deed of November 29, 1871, that Mayberry had not the right to develop water on that tract, a contention which was overruled in this court. Understanding said judgment in the light of the pleadings on which it rested and the facts then existing, we think it plain that it does not operate to enlarge the meaning of the contract of 1860 in Mayberry's favor. (*Lillis v. Emigrant Ditch Co.*, 95 Cal. 553; *Caperton v. Schmidt*, 26 Cal. 479; 85 Am. Dec. 187.) We are fully mindful of the argument founded on what Mayberry appears to consider a cumulation of rights decreed to him in that judgment—it declaring that he is entitled to divert and use for two days of the week all the water of the canyon necessary to irrigate the described land, and "also the right to divert and use on said days and for said purpose . . . . any water flowing in any ditch, flume, et cetera, made, constructed, or used by Wilson or his successors in interest . . . . over or across" the land of plaintiff. This provision can apply only to rights which were sub judice in that action; and, in our opinion, it has

substantially the same effect as the corresponding clause of the contract of 1860—which, no doubt, it was the purpose of the judgment to confirm—viz., to establish the right of Mayberry, within the stated limits, to divert and use the natural water of the stream from whatever aqueduct may be used for conducting it across his land; but this includes no interest in the artificial flow.

2. Previous to November, 1892, plaintiff was accustomed to divert the water for irrigation on Fridays and Saturdays from the aqueducts of plaintiff into which it flowed from the stream. At that time defendant undertook to apportion to plaintiff the quantity of water which it assumed to be the natural flow, and thereafter measured the same by means of certain weirs into his diverting appliances, retaining in its own aqueducts the residue which was assumed to be the added or developed water. The amount of water which defendant thus undertook to measure to plaintiff was fifty inches under four-inch pressure, and the court found that the natural flow during the irrigating season does not exceed that amount. One of the objects of the action is to enjoin defendant from interfering with the use of the water to which plaintiff is entitled; the court found in effect that the said conduct of defendant respecting the measurement of the water constitutes no interference with plaintiff's rights, and that he will receive in that manner all the water he is entitled to.

These findings are not sustained by the evidence. There is nothing in the contract of 1860 which fixes the amount of water to be used by Kewen at any quantity less or greater than the whole natural flow on the two specified days when necessary for the irrigation of his tract. The fact, if such fact there is, that plaintiff does not at present use or need all the natural flow to irrigate the land as he now cultivates it, does not authorize a restriction of his privileges under the contract; his necessities for use of the water to irrigate his land may increase in the future. The flow doubtless varies with the annual rainfall and with the progress of the dry season; the evidence of defendant's own engineers of a measurement made with great care on June 24, 1887, just before defendant began the work of developing water, shows that fifty-five inches then flowed in the channel; we do not find that the force of this evidence is avoided

by anything else in the record; it seems probable that at times during the irrigating season the natural volume was yet greater, and no doubt it was at times less. The mistake of the water company lay in taking charge of the natural flow on Fridays and. Saturdays and assuming to measure to plaintiff a fixed quantity thereof; it had the right to measure and retain for its own exclusive use the amount of added or developed water, but it was the right of plaintiff to take the residue, whether much or little, so far as was necessary to irrigate his land, without interference by defendant. (See *Butte Canal Co. v. Vaughn, supra.*) Of course, if he should abuse that privilege, contrary to the contract and the former judgment, he might be restrained. Defendant dwells somewhat on the fact asserted that Mayberry acquiesced in its apportionment of the water to him from November, 1892, to the commencement of this action; we do not see how this was material unless as bearing on his claim for damages—which he does not urge on appeal; such acquiescence could not impair his interest under the contract unless continued for a time sufficient to bar his right by adverse user.

3. There were certain findings on which are founded a provision of the judgment that defendant is the owner (subject to qualifications not necessary to state) "of all the water rights in said Mill stream and of all the land through which the same flows, from its source to the point where it is conducted into defendant's main pipes." As the fifty-acre tract of land conveyed by Wilson to Kewen in 1871 includes part of the channel, and as the flume through which the water is conducted to defendant's main pipes lies also on that tract, the findings and portion of the judgment just mentioned are broader than the facts warrant; they perhaps cast some cloud on the rights of plaintiff in said fifty-acre parcel, and should be modified.

Some other points are made by appellant, but considering the views above advanced it is believed that they become immaterial. While we are satisfied that upon the main subject of dispute— the use of water developed by defendant—the decision of the court below was right, yet because of the errors in minor particulars we have indicated, and to the end that the same may be corrected, the judgment and order denying a new trial should be reversed.

Chipman, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

McFarland, J., Temple, J., Henshaw, J.

Rehearing denied.