[L. A. No. 20863.   In Bank.   Apr. 25, 1950.]

ROSA YORBA LOCKE, Appellant, v. YORBA IRRIGA- TION COMPANY (a Corporation) et al., Respondents.

Launer, Chaffee & Launer, Albert Launer and Walter B. Chaffee for Appellant.

Head, Wellington & Jacobs, Friis & Schutz, McFadden, Turner & Owens and Claude M. Owens for Respondents.

SHENK, J.—The plaintiff appealed from a judgment for the defendants in an action to quiet her title to seven shares of stock of the defendant Yorba Irrigation Company.

The history of the acquisition of the stock is not disputed. Prior to 1919 the plaintiff was the owner of 118 acres of land in Orange County which formerly had been a portion of the Rancho Canon de Santa Ana, an original Spanish grant to an ancestor, Jose Antonio Yorba. The original rancho was riparian to the Santa Ana River. By various decrees in probate and partition actions it was divided into smaller parcels with retention of riparian rights. The parcels were served

water for domestic and irrigation use from the Santa Ana River through the Yorba ditch. By custom and agreement depending upon the extent of cultivation and need each parcel became entitled to a specified number of hours run of 200 miner's inches of water every ten and one half days. Apportionment was not on an acreage basis. Some larger parcels received less than smaller parcels having greater acreage under cultivation. The plaintiff became entitled to seven hours run every ten and one half days.

In 1913 the owners of the various parcels served by the Yorba ditch organized the defendant Yorba Irrigation Company as a mutual water company. They conveyed their water rights to the company and received in exchange one share of stock for each hour of flow to which they had become entitled. The certificates of stock designated the parcels to which the water rights pertained. The plaintiff received a certificate of seven shares of stock stated to be appurtenant to her 118-acre parcel.

The by-laws of the company provided that the stock should not be transferable except with the land for which it was issued, and that a conveyance of the land should constitute a transfer of the stock appurtenant thereto. The provisions in this respect were substantially those permitted by section 330.24 of the Civil Code, and it may be assumed were binding on the parties although a certified copy of the articles of incorporation and by-laws was not recorded until 1945.

During the period of her ownership of the 118-acre parcel the plaintiff had utilized substantially the entire flow of water to which she was entitled on the easterly 56 acres which, with the possible exception of 5 acres, constituted the only portion under cultivation. There was also maintained on the parcel a well and pump for additional water when needed. In 1919 the plaintiff conveyed the westerly 62 acres to Mary E. Rhorer by a deed which recited that the grantor reserved "all right to water from the Santa Ana River, as conveyed to the Yorba Irrigation Company." Shortly thereafter the grantee conveyed the parcel to her agents in the transaction, Charles O. Goodwin and Harry F. Dierker and their respective wives in joint tenancy. That parcel thereupon became known as the Goodwin-Dierker Tract. It was subsequently subdivided and numerous parcels sold to persons who organized the Goodwin Mutual Water Company for the purpose of developing water from wells to serve their needs.

In 1923 in order to utilize her land and water stock as security for a loan, the plaintiff requested the issuance to her of a certificate showing the seven shares as appurtenant to her 56-acre parcel. For this purpose and at the secretary's request, she obtained and filed with the company a letter signed by Harry F. Dierker and Chas. O. Goodwin stating that they were aware of the fact that ownership of the seven shares of stock had been retained by the plaintiff and that they, the present owners of the 62-acre tract, disclaimed any right or ownership in the seven shares of stock or any right to the use of water represented by the stock. Thereupon the old certificate was cancelled and a new certificate representing seven shares as appurtenant to the 56 acres was issued to the plaintiff. She remained the owner of the seven shares on the books of the company, voted the shares, paid any assessments thereon, and utilized all of her water rights pursuant thereto until November, 1945. Admittedly prior to that time none of the individual defendants voted any of the stock or used any of the water. But before that time it had become apparent that the owners in the Goodwin-Dierker tract could use more water and that the irrigation company had some surplus water which could be utilized by additional customers, but only through stock ownership. In the latter part of 1945 one Fickle, owner of 10 acres in the Goodwin-Dierker tract, demanded of the irrigation company that it transfer to him 10/118ths of the plaintiff's seven shares. Over the plaintiff's protests a certificate was issued representing the proportion demanded by Fickle and a like amount was cancelled from the plaintiff's certificate. The plaintiff thereupon filed the present action to quiet title to the full seven shares, basing her claim on ownership by the reservation in the 1919 deed and on a prescriptive right by adverse possession continuously since 1919.

The trial court found in substance that the plaintiff did not reserve any portion of the stock by the 1919 deed; that the seven shares of stock were appurtenant to the 118-acre tract; that after conveyance in 1919 they remained appurtenant thereto, and that the individual defendants became the owners of the proportion represented by the amount of land conveyed to them. The court also found that the plaintiff acquired no rights by adverse possession.

The findings and judgment indicate the court's acceptance of the defendants' theories that there is a distinction to be made between a reservation of the stock and a reservation of the water rights; that since the plaintiff in 1919 already had

conveyed her water rights to the irrigation company, she could not reserve them, and she made no express reservation of the stock; and that in any event under the by-laws the water rights or stock remained unalterably appurtenant to the land to which originally they applied.

The misconceptions upon which these theories are based will readily become apparent. It is true that the plaintiff's deed reserved the right to the water without mention of the stock. But since the right and the stock were one and the same, the latter being merely the representation of the former, the invoked distinction may not be drawn. The transfer of the water right to the mutual irrigation company organized to take over the distribution of water from and the maintenance of the Yorba ditch and the issuance of stock representing the quantum of the right, was nothing more than a change in the formal evidence of title or ownership of the water right. At no time was there other than a change in the form of the ownership of the right, which in substance remained in the plaintiff by virtue of the issuance to her of the certificate of stock. (*Estate of Thomas,* 147 Cal. 236 [81 P. 539] ; *Arroyo Ditch & Water Co.* v. *Baldwin,* 155 Cal. 280 [100 P. 874] ; *Copeland* v. *Fairview Land etc. Co.,* 165 Cal. 148, 161 [131 P. 119] ; 2 Wiel Water Rights, 3d ed., § 1269.) Therefore it became immaterial whether in the deed the plaintiff designated the reservation as of the water right or the stock. The right was one which she could reserve and the reservation was sufficient to preserve to her the use of the ditch water to the extent designated by the stock certificate (*Alhambra etc. Co.* v. *Mayberry,* 88 Cal. 68 [25 P. 1101] ; *Painter* v. *Pasadena L. & W. Co.,* 91 Cal. 74 [27 P. 539] ; *San Rafael Ranch Co.* v. *Ralph Rogers Co.,* 154 Cal. 76 [96 P. 1092]) unless the by-laws prevented.

The by-laws constituted an agreement that the stock should be transferable only with the land and that at least in the absence of reservation of water rights or stock the rights would pass with a conveyance of the land. Had the conveyance been made by the plaintiff without mention of the water rights unquestionably those rights would pass with the conveyance. (*Riverside Land Co.* v. *Jarvis,* 174 Cal. 316 [163 P. 54].) A similar conclusion might follow if the plan of the land owners in organizing the irrigation company had shown an intention that every portion of the land in ownership should receive water and that the right of every portion

of the land to receive water was perpetual and could not be severed. This is a familiar plan in the organization of irrigation districts or water companies where distribution of water is measured by the quantity of land, whether or not stock is issued as evidence of the quantum of the right. (See *Franscioni v. Soledad Land & Water Co.*, 170 Cal. 221 [149 P. 161].) In all such plans ownership of land is the basis of the right to water for irrigation. But unless by the mutual plan or agreement or basis of organization such water right becomes inseparably attached to the whole of a parcel, there is no doctrine which would prevent a grantor from conveying a portion of the land with a reservation of the right for use on the land retained. In this case the plan of organization does not, nor does the custom of use on which it was based, the by-laws, or the conduct of the parties evidence an intention that no parcel of land could be conveyed expressly without a water right appurtenance.

There was no evidence of use of water on all of the land. The distribution of water was on a use and not on an acreage basis, and this was so both before and after the organization of the irrigation company. At all times the plaintiff's entire allotment was used on less than half of her parcel, which was the portion which she retained. The by-laws provided that stock could be transferred only with land; and that a conveyance of land "shall constitute a transfer of the stock appurtenant thereto," or that shares of stock "shall pass as an appurtenance thereto." There is neither plan nor provision which prevented a conveyance of land without the stock where, as here, an express reservation precluded its passing as an appurtenance thereto so long as there was land retained by the grantor to which the stock could be appurtenant. That this is the proper interpretation of the by-laws and agreement is plainly indicated by the conduct of the parties who acted in accordance therewith. In fact it is difficult to see how the irrigation company or the plaintiff's grantees and their successors could deprive her of the reserved right to water, in view of the foregoing facts and conduct, unless the intention was clear that the water was distributable to all of the land on an acreage basis, and that the right to distribution of water thereto was perpetual to the whole thereof. The foregoing facts indicate that the parties contracted in the sale transaction on the basis of a consideration for the 62 acres without the water rights. It was in evidence that if the acreage had been sold with the water rights it would have been worth $150 to

$200 more per acre. On the facts disclosed by this record an interpretation which does not prohibit the plaintiff's express reservation of the water right is the only reasonable and therefore the only acceptable construction of the by-laws.

█ The contention that the evidence does not support the finding that the plaintiff had not established her claim to the stock and water rights by adverse possession must be sustained. Water rights are a species of real property capable of acquisition by adverse user. (Civ. Code, § 1007; *Northern Calif. Power Co.* v. *Flood,* 186 Cal. 301 [199 P. 315]; *Lee* v. *Pacific Gas & Elec. Co.,* 7 Cal.2d 114 [59 P.2d 1005].) All of the elements of adverse, open, hostile and exclusive user of the quantum of water and uninterrupted exercise of rights under claim of stock ownership for a period of more than 25 years are present. There was no showing that the additional water for which the irrigation company sought other users was due to any nonuser of rights by the plaintiff. There is no conflict in the testimony to the effect that during the irrigation season the plaintiff used all the ditch water to which she was entitled and that she supplemented the supply by the use of well water when her right to ditch water was insufficient to meet her needs.

Other contentions need not be discussed.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied May 22, 1950.