Filed 3/5/26  US Horticulture Farmland v. Servin CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

US HORTICULTURE
FARMLAND, LLC,

    Plaintiff and Appellant,

v.

LAUREL SERVIN et al.,

    Defendants and
Respondents.

2d Civ. No. B332314
(Super. Ct. No. 22CV02720)
(Santa Barbara County)

Appellant US Horticulture Farmland, LLC (US Horticulture) filed a derivative action against the board of directors (Respondents) of the Berylwood Heights Mutual Water Company (Berylwood).  It alleged Respondents breached their fiduciary duty and the corporation's bylaws by joining the phase 2 settlement in *Las Posas Valley Water Rights Coalition v. Fox Canyon Groundwater Management Agency* (Super. Ct. Santa Barbara County, 2003, No. VENCI00509700) (Las Posas Valley Groundwater Adjudication or Adjudication).  The trial court ruled

in favor of Respondents. US Horticulture contends the trial court erred in finding no breach of fiduciary duty and finding the shareholders retained their overlying water rights. We affirm.

FACTS AND PROCEDURAL HISTORY

Berylwood is a mutual water company "organized for the purpose solely of delivering water to its shareholders at cost." Its service area overlies the Las Posas Valley Groundwater Basin (Basin). In 2021, US Horticulture purchased Donlon Ranch, an agricultural property scheduled for irrigation by Berylwood. US Horticulture also acquired 3,720 shares of Berylwood stock associated with Donlon Ranch.

Respondents, Laurel Servin (president of Berylwood), Gwyn Goodman, John Wise (owner of Wise Orchards), Josh Waters, and Jennifer Foster, were the five members of Berylwood's board of directors at the time of the phase 2 settlement in the Adjudication. Servin, Goodman, and Wise Orchards were Berylwood shareholders, and Waters's brother was a shareholder. Foster was not a Berylwood shareholder. She had previously been a shareholder and director of Solano Verde Mutual Water Company, another water company in the Basin, but she sold her property. Foster owned no Berylwood or Solano Verde shares when she served on Berylwood's board. Servin became a Berylwood board member in March 2021. And Goodman, Foster, Waters, and Wise later became board members.

In March 2018, an unincorporated association comprised of landowners in the Basin filed a complaint initiating the Las Posas Valley Groundwater Adjudication—a comprehensive adjudication that would determine all groundwater rights in the Basin. The Adjudication was divided into phases, with phase 2

2

determining the majority of the groundwater rights and priorities in the Basin. US Horticulture, Berylwood, and Respondents were all parties to the Adjudication.

One of the contested issues in the Adjudication was whether landowners/shareholders or the mutual water companies owned the rights to the groundwater pumped and delivered by the water companies to its shareholders. Plaintiffs in the Adjudication asserted that the mutual water companies, including Berylwood, were agents of their shareholders and that shareholders retained the overlying water rights. Other parties, including US Horticulture, asserted that the mutual water companies owned the rights to the water pumped and delivered to its shareholders.

Some parties to the Adjudication prepared a phase 2 settlement, which allocated the water rights among the groundwater users in the Basin. The proposed allocation schedule was based on the Master Disclosure Record, a document that included comprehensive information about historical water use, irrigated acreage, and land ownership. For the most part, the allocations were based on land ownership and the amount of groundwater reasonably needed by an individual landowner on their land. The phase 2 settlement provided that mutual water companies delivered water as agents of the landowners/shareholders. The settlement thus allocated water directly to landowners. Mutual water companies, including Berylwood, only received allocations for slippage and line loss[1] related to the delivery of water.

---

[1] Slippage and line loss is water loss incidental to the transportation of water.

Prior to the Respondents joining Berylwood's board, Jane Donlon Waters served as Berylwood's president. She and the other directors serving on Berylwood's board at the time hired Craig Parton as counsel to represent Berylwood in the Adjudication. In June 2021, Parton resigned as Berylwood's attorney and recommended Keith Lemieux as his replacement. In July 2021, Lemieux was hired by the then board of directors of Berylwood, which included Servin (the only one of the five Respondents serving on the board of directors at the time). Thereafter, several board directors resigned, and the other Respondents (Goodman, Foster, Waters, and Wise) became board directors.

In December 2021, Berylwood held a shareholders' meeting to decide whether to approve the phase 2 settlement. At the meeting, Lemieux presented his legal opinion that Berylwood historically acted as an agent of the shareholders' exercise of their overlying rights when it delivered water. Respondents recommended the shareholders vote to approve the settlement. Following a question-and-answer session, the majority of all shareholders voted to approve the settlement. Servin signed a version of the phase 2 settlement on behalf of Berylwood.

In August 2022, after a technical revision of the phase 2 settlement, Respondents delegated approval of the revised phase 2 settlement to a committee consisting of one director—Foster, who owned no Berylwood shares. Foster approved the phase 2 settlement. The phase 2 settlement was approved by a large majority of the parties to the Adjudication (approximately 87% of all parties who were groundwater extractors in the Basin). The trial court adopted the phase 2 settlement in the phase 2

4

statement of decision and later in the final judgment of the Adjudication.

In March 2022, US Horticulture filed the underlying derivative suit against Respondents in Ventura County Superior Court, alleging breach of fiduciary duty based on Respondents entering into the phase 2 settlement and taking the position that Berylwood was a "Trustee Mutual." US Horticulture also alleged breach of contract against Respondents for refusing their obligation to distribute water by pro rata share as set forth in Berylwood's bylaws. The case was transferred to Santa Barbara County Superior Court and coordinated with the Adjudication.

Following a bench trial, the trial court ruled in favor of Respondents. The court found that US Horticulture failed to prove breach of fiduciary duty or breach of contract. It concluded there was "[n]o evidence . . . to establish the existence of any writing severing the relevant water rights from the overlying landowners and transferr[ing] these rights to Berylwood. . . . All of plaintiff's claims must therefore fail as a matter of law." The court also concluded US Horticulture could not prevail on its claims because it did not prove damages and causation. It also concluded US Horticulture's claims were barred by the application of the business judgment rule.

DISCUSSION

*Ownership of water rights*

US Horticulture contends the trial court erred in finding the shareholders retained their overlying water rights. We review this contention for substantial evidence. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) The same contention was raised and decided in the Las Posas Valley Groundwater Adjudication, and that judgment was appealed to

5

our court in *Las Posas Valley Water Rights Coalition v. Fox Canyon Groundwater Management Agency* (Mar. 5, 2026, B330837) ___ Cal.App.5th ___.) Because that appeal and the instant appeal involve related issues, we ordered the two cases be considered simultaneously for oral argument and disposition. As we explain in that case, there was no error in finding the shareholders, not the mutual water companies including Berylwood, retained the overlying rights to groundwater.

In the Adjudication, the trial court found that "Berylwood's shareholders retained their own overlying rights to Basin groundwater." The "shareholders had never transferred their rights to Berylwood, and Berylwood had never severed or otherwise impaired those rights."

Substantial evidence supports this finding. The landowners did not sever their overlying rights or transfer them to the water companies by a written covenant. (See Civ. Code, § 1624, subd. (a)(3) [an agreement for sale of real property or of an interest therein is invalid unless in writing]; *Smith v. O'Hara* (1872) 43 Cal. 371, 376–377 [evidence of written deed required to prove water rights transaction].) Moreover, Berylwood's course of conduct reflects it was acting as an agent of the shareholders. It has never "asserted exclusive rights against their shareholders." For example, the companies never restricted shareholders from extracting their own groundwater or drilling private wells. And Berylwood has not historically limited deliveries according to share ownership, which gave "landowners no reason to believe their water rights would be so limited in the future." This evidence supports the trial court's finding the landowners retained ownership of their groundwater rights.

6

US Horticulture identifies two transactions purportedly transferring the landowner shareholders' water rights to Berylwood—transactions involving the Berylwood Investment Company and the Virginia Johnson deed. But neither of these transactions evince a transfer of water rights from the overlying landowner shareholders.

With respect to the Berylwood Investment Company transaction, it was merely a "stock transaction" that "did not sever the overlying landowners' water rights or transfer them to the company." (See *Locke v. Yorba Irrigation Co.* (1950) 35 Cal.2d 205, 209 [stock representing the "quantum of the right" did not change in ownership of the water right]; see also *Copeland v. Fairview Land & Water Co.* (1913) 165 Cal. 148, 161–162 [stock certificates stating that shareholders were entitled to a part of water " 'belonging to' " the water company "did not change the nature of the right, nor divest the beneficial interest therein from" the owner of the land, who retained the riparian right].) The Johnson deed grants an easement to Berylwood for developing a well. The deed expressly "reserves [the grantor's] . . . right to develop water from said properties" and does not sever landowner's overlying rights to groundwater.

But even if Berylwood obtained a water right, it would only have been an appropriative right. Appropriative rights are subordinate to overlying rights and available only when there is surplus water. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1241.) The court ruled it could not grant Berylwood any allocations as an appropriator because there was no surplus available. Substantial evidence supports the court's finding there was no surplus available.

7

Berylwood's corporate documents do not establish the contrary. These documents do not show the landowner shareholders forfeited or severed their ownership of overlying water rights to the water companies. To the extent Berylwood argues that its bylaws entitle shareholders only to water proportional to their pro rata share of stock in the company, this argument conflates the shareholder's water rights with the right of water delivery and service from the water company. Berylwood's bylaws may limit *delivery* of water based on a pro rata share, but it cannot eliminate a landowner's overlying right to groundwater. For this reason, the breach of contract cause of action fails. US Horticulture cannot demonstrate Respondents breached Berylwood's bylaws because the phase 2 settlement does not conflict with the bylaws.

The trial court's allocation directly to landowner shareholders comports with governing law on water rights. An overlying right is the right of the landowner "to take water from the ground underneath for use on [their] land within the basin . . . ; the right is based on ownership of the land and is appurtenant thereto." (*City of Pasadena v. City of Alhambra* (1949) 33 Cal.2d 908, 925.) This right is paramount and receives priority over appropriative rights. (*Id*. at p. 926.) Without any evidence of severance of these superior overlying rights, the court properly found Berylwood did not own the rights to the water delivered to its shareholders.

### Breach of fiduciary duty

Having concluded the shareholders retained their water rights, we now turn to whether Respondents breached their fiduciary duty by approving and recommending the shareholders approve the phase 2 settlement. "The elements of a claim for

breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1405.)

Here, the trial court found that "[n]o evidence was presented to establish Berylwood was ever damaged." It reasoned that "Berylwood cannot have been damaged by its board of directors taking a position in litigation that is legally correct." The court also found that "[n]o evidence was presented to establish causation, in that no evidence was presented to establish the outcome of the Phase 2 Trial would have been *different* but for the actions of Defendants."

We agree that US Horticulture cannot demonstrate damages proximately caused by the Respondents' agreement to the phase 2 settlement. The trial court's phase 2 decision to allocate water to the landowner shareholders based on their superior overlying rights was supported by law and facts. Thus, Berylwood cannot prove it suffered damages from Respondents taking a legally correct position. Furthermore, there was no evidence that Respondents' approval of the settlement proximately caused any alleged damages. US Horticulture did not show that the phase 2 trial would have resulted in a different outcome had Respondents voted not to approve the phase 2 settlement. There were several parties advocating the same position in the Adjudication, and Respondents joined the phase 2 settlement signed by approximately 87% of all parties who were groundwater extractors in the Basin. US Horticulture does not show the phase 2 trial hinged on Respondents' decision to approve the settlement.

9

In attempting to prove damages, US Horticulture contends Berylwood's damages amounted to over $500,000 in attorney fees for Respondents' use of corporate funds "to advocate against the corporation and in favor of their own interests." But US Horticulture cannot show counsel's representation in the Adjudication was caused by a breach of *Respondents*' fiduciary duty. The decision to retain independent counsel (Parton) to represent Berylwood in the Adjudication was made prior to any of the Respondents joining the board of directors.

To the extent US Horticulture contends the subsequent hiring of Lemieux was a breach of fiduciary duty, this contention fails for several reasons. Servin was the only one of the five Respondents who was on the board of directors at the time of Lemieux's hire. There was also "[n]o evidence . . . offered that indicated [Respondents] . . . 'shopped' for counsel to advance a favored litigation position." There was undisputed evidence Lemieux formed his own opinions and presented them to Respondents and all shareholders. There is no contrary evidence to suggest Respondents influenced Lemieux's litigation strategy. The decision to retain counsel to represent Berylwood's interest in the Adjudication was also reasonable because it ensured Berylwood would, among other things, secure adequate water allocation for slippage and line loss. For these reasons, US Horticulture cannot prevail on its breach of fiduciary duty claim.

Furthermore, the trial court did not err in concluding Respondents' business decisions relating to the approval of the phase 2 settlement and to hire independent counsel were immune from liability under the business judgment rule. There are two components to the business judgment rule. The first component is codified in Corporations Code section 309 and immunizes

10

corporate directors from liability. A "director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances." (Corp. Code, § 309, subd. (a).) When a director satisfies this standard, the director "shall have no liability based upon any alleged failure to discharge the person's obligations as a director." (*Id.*, subd. (c).)

The second component of the business judgment rule is based on common law and bars court intervention in a director's management decision which is made in good faith and for what the director believes is in the organization's best interest. (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 257.) The business judgment rule is "based on the premise that those to whom the management of a business organization has been entrusted, and not the courts, are best able to judge whether a particular act or transaction is helpful to the conduct of the organization's affairs or expedient for the attainment of its purposes. [Citations.] The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." (*Lee v. Interinsurance Exchange* (1996) 50 Cal.App.4th 694, 711.)

But "[a]n exception to the presumption afforded by the business judgment rule accordingly exists in 'circumstances which inherently raise an inference of conflict of interest' and the

11

rule 'does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest.' " (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1045.) The premise that corporate directors are best able to judge whether a particular transaction will further the company's best interests is undermined when directors approve corporate transactions in which they have a "material personal interest unrelated to the business's own interest. And it is particularly undermined when a majority of these directors approve transactions while having a material conflict of interest." (*Coley v. Eskaton* (2020) 51 Cal.App.5th 943, 953 (*Coley*); see accord *Orman v. Cullman* (Del.Ch.2002) 794 A.2d 5, 23 [a material conflict of interest exists when the benefit to the director "was significant enough '*in the context of the director's economic circumstances,* as to have made it improbable that the director could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest' "].) "In most cases, 'the presumption created by the business judgment rule can be rebutted only by affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching or an unreasonable failure to investigate material facts.' " (*Berg*, at p. 1046.)

Whether the business judgment rule applies raises issues of fact which we review for substantial evidence. (See *Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1267; *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 32.)

Here, substantial evidence supports the trial court's application of the business judgment rule. The court found "[v]ery credible" director Servin's testimony that the directors decided in good faith that it was in the best interest of Berylwood

12

and its shareholders to join the phase 2 settlement. The basis for that decision was the lack of evidence reflecting a transfer of water rights from any landowner shareholder to Berylwood, the consistency of the phase 2 settlement terms with the historical operations of Berylwood, and that parties opposing the settlement would have the opportunity to litigate the reasonableness of the phase 2 settlement in the Adjudication.

Furthermore, a majority of Berylwood shareholders voted to approve the phase 2 agreement after a meeting where Berylwood's counsel presented his independent opinion and provided them with the "fullest information available." (*Hill v. State Farm Mutual Automobile Ins. Co.* (2008) 166 Cal.App.4th 1438, 1493 [" ' "[a]pproval of a transaction by a majority of independent, disinterested directors almost always bolsters [the] presumption that the business judgment rule attaches to [that] transaction" ' "].)

The final approval of the phase 2 agreement was also delegated to a committee consisting of Jennifer Foster, who had no shares in Berylwood. The court found "[v]ery credible" Foster's testimony that she reached her opinion independently from the other Respondents and after consultation with both Berylwood's general manager and counsel. Foster also testified she exercised reasonable inquiry, as an ordinary prudent person would in a like position to reach her decision. "California courts 'properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.' " (*Charter Township of Clinton Police & Fire Retirement System v. Martin* (2013) 219 Cal.App.4th 924, 942.) Under Delaware law, a transaction approved by an independent special committee "can serve as powerful evidence of

13

fair dealing." (*Gesoff v. IIC Industries Inc.* (Del.Ch.2006) 902 A.2d 1130, 1145.) The evidence and circumstances here support that Respondents decided in good faith that it was in the best interest of Berylwood and its shareholders to join the phase 2 settlement.

There was no evidence of a material conflict of interest that would deprive Respondents of the presumption afforded by the business judgment rule. Although four of the Respondents were shareholders or had a family member who owned shares in Berylwood, these four directors never concealed their interests. Moreover, any financial interests or benefit they held would be the same benefit shared in common with Berylwood's other shareholders based on their overlying rights. (Compare with *Coley*, *supra*, 51 Cal.App.5th at p. 957 [directors of a homeowner's association could not be immunized by the business judgment rule because their financial interest was "personal and distinct from that enjoyed by the Association members generally"].)

Based on this record, we conclude the business judgment rule immunizes Respondents from liability.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


YEGAN, Acting P. J.          CODY, J.


14

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Young Wooldridge and Brett A. Stroud for Plaintiff and Appellant.

Tyson & Mendes, James E. Sell and Mitchell B. Malachowski for Defendants and Respondents.

O'Melveny & Myers, Jeffrey L. Fisher, Barton Thompson, Anton Metlitsky, Matt Kline, Russell McGlothlin and Heather Welles for Leavens Ranches LLC, Ann T. Broome Trust dated June 1, 1967, Elizabeth S. Broome Trust dated June 1, 1967, John S. Broome Jr. Trust dated June 1, 1967, Farmland Reserve, Inc., GST Exemption Trust, Survivor's Administration Trust under the Grether Family Trust, dated September 12, 1989, JG Leavens LLC, Mittag Farms, Mittag Ranches, Seacoast Farms, LLC and Sunshine Agriculture, Inc. as Amici Curiae on behalf of Defendants and Respondents.