ORTMAN *et al. v.* DIXON *et al.*

QUERY: Whether a water right, to pass the *legal* title from grantor to grantee, the premises being in adverse possession, must be conveyed by deed?

Any contract executed which passes the equitable right to a ditch and the use of the water appurtenant to, or connected with, the ditch, as the property of the grantee, is enough to insure to him the rights for which he stipulated as against an adverse claimant.

The difference between instruments sealed and unsealed is, at this day, a mere unmeaning and arbitrary distinction made by technical law, unsustained by reason. By the common law, the equitable title to realty may be conveyed by instrument not under seal, if otherwise sufficient; and this equitable title, accompanied by possession, is sufficient under our system to give the right of possession.

Under our system, probably, an action can be maintained upon any title legal or equitable, or upon an instrument, sealed or unsealed, which entitles plaintiff to the possession of the property in dispute as against the defendant.

Ortman *et al.* *v.* Dixon *et al.*

In a proceeding in equity an equitable title is as good as a legal title, either for defense or recovery.

A prior appropriator of the water of a stream for mill purposes is entitled to it to the extent appropriated, and for those purposes to the exclusion of any subsequent appropriation of it for the same or any other purpose.

But the extent of the right depends on the nature and uses of the appropriation.

If he suffers a portion of the water, or the body of it, after running the mill, to go on down its accustomed course, persons below may appropriate this residuum so as to make it a vested right.

No distinction can be drawn between a mill owner and a miner as to their rights in appropriating water.

*Query:* Whether a party, by erecting a mill and dam, becomes entitled to the water *in specie,* and whether he is entitled to anything more than the use of the water as a motive power—whether there may not be an appropriation of a mere use of the water as well as an appropriation of it as property for sale?

In equity cases, where the proofs are conflicting, the findings will not usually be disturbed.

APPEAL from the Tenth District.

The facts appear in the opinion. The Court below decreed:

1st. That defendants were first entitled to the water flowing in Mill Creek for the use of their saw-mill.

2d. That plaintiffs were entitled to the use of a sufficient quantity of the water of the stream to fill and supply their Ditch No. 2, at such times as the defendants were not using the same to propel their mill.

3d. That plaintiffs were entitled to the water to fill their Ditch No. 2, in preference to the ditch of defendants, No. 3.

4th. That when plaintiffs' ditch is filled according to its capacity to contain water, then, if there remain any surplus of water flowing in the stream, the defendants are entitled to have such surplus.

Defendants appeal.

*E. D. Wheeler,* for Appellants.

1st. Can the legal title to a water right pass by a bill of sale not under seal? As a legal proposition, this is too clear to need much argument. A water right is a thing lying in grant, and can be conveyed only by deed under seal. The authorities all agree on this point. It is a rule as firmly established as any principle of the common law. The common law rule upon this subject was expressly adopted in this State in Hill *v.* Newman, 5 Cal. 445. The same rule is laid down in Bullen *v.* Runnels, 2 N. H. 261, 262; Fentiman *v* Smith, 4 East. 107; Carson *v.* Blazer, 2 Binney, 490; Thompson *v.* Gregory, 4 John. 83; Angell on Water Courses, Secs. 168—171.

*Ortman et al. v. Dixon et al.*

Defendants had a right to change the point of diversion from the main stream, provided only such change did not impair the rights of others. In this case the same quantity of water was taken, and hence no one was injured. The fact that defendants did not always use all the water they were entitled to at their mill amounts to nothing. (Angell on Water Courses, Sec. 230.) That a party may change the *mode, object*, and *place*, of using a water right, so that the quantity be not increased. (See Whittier *v.* Coch. Man. Co. 9 N. H. 458; Bullen *v.* Runnels, 2 N. H. 255; Johnson *v.* Rand, 6 N. H. 22; Saunders *v.* Newman, 1 Barn. & Ald. 258; Bigelow *v.* Battle, 15 Mass. 313; Kelly *v.* Natoma Water Co. 6 Cal. 105; Morris *v.* Bicknell, 7 Cal. 261; Angell on Water Courses, Sections 227, 228, 229; 14 Mees. & Wels. 789; Tyler *v.* Wilkinson, 4 Mason, 397; Palmer *v.* Mulligan, 3 Caines, 307.)

*Reardan & Smith*, for Respondents.

The question whether a water right can pass, except by deed, does not arise in this case, because there is no issue as to the ownership of the ditch. Besides, if no writing at all had been executed the respondents are in possession, and had been for years prior to the commencement of this action, and certainly, their possession will enable them to maintain an action against a trespass.

The authorities cited by the Appellants' counsel are not applicable to a case of this kind. In those cases the right to use the water followed the ownership of the soil over which it ran, and was an incident thereto; but in this State, and particular in the mountains and mineral regions, the right to the use of the water is acquired by prior appropriation and *user* only, and this is the only notice that third parties can have of such a right in any one.

Appellants' second point amounts to this, that one who happens to be the first appropriator, no matter at what point on a stream, has the right at any time, by virtue of his naked appropriation and possession, to abandon his original location and divert the water at any point higher up the stream, notwithstanding others may have, in the meantime, at intermediate points, erected improvements and appropriated the water to useful purposes, and thus completely cut off such intermediate parties; this cannot be done.

The authorities cited by Appellants have no bearing upon the case, so far as we have been able to discover; they only go to the extent of deciding that one may turn the water out of the stream at a point below his original place of diversion, provided he injure no one else. This, so far as our case is concerned, we are willing to admit.

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

Bill filed for an injunction against the defendants, to restrain them from turning the waters of a stream, called Mill Creek, into a ditch constructed by them, known as Ditch, No. 3, as marked on the map accompanying the pleadings.

Two main questions arise on the record : 1st. Can a water right be conveyed by a bill of sale not under seal ? and, 2d. Has the prior locator of a water privilege the right to change the point of diversion from the main stream under the facts hereafter stated ?

*First*—We do not consider that it is at all necessary to hold that a water right, so as to pass the *legal* title from grantor to grantee (the premises being in adverse possession), must be conveyed by deed; for here the right of the water was appurtenant to, or connected with, a ditch. Any executed contract which passed the equitable right to the ditch, and the use of the water as the property of the grantee, is enough to assure to him the rights for which he stipulated as against an adverse claimant. Possession itself would be enough, and surely that possession is no worse for being associated with an equitable right. The difference between instruments sealed and unsealed is at least, at this day, a mere arbitrary and unmeaning distinction made by technical law, unsustained by reason; and, though the Courts may have no right to abrogate what the law has established, even when the rule be senseless, yet we will not go out of our way to give effect to such distinctions, when the law does not clearly so require. But this distinction between sealed and unsealed papers has no force, as a general rule, except in a particular class of cases to which this does not belong. Where an instrument touching title to the realty is not under seal, the strict legal title, at common law, was not conveyed; but the equitable

title might be conveyed by an instrument not sealed, if otherwise sufficient; and this equitable title, if accompanied by possession, is sufficient, under our system, to give a right of possession. Indeed, we do not see, under our system of practice, which recognizes none of the old forms of action, but which was designed to afford a plain, unembarrassed remedy upon the particular facts of each case, why an action cannot be maintained upon any title, legal or equitable ; or upon an instrument sealed or unsealed, which entitles the plaintiff to the possession of the property in dispute as against the defendant. But this is a proceeding in equity, and in that form an equitable title is as good as a legal title, as a matter for defense or recovery.

*Second*—The second question is of more difficulty ; it involves the necessity of an examination of the particular facts in connection with which it is made. In the fall of 1851, the first ditch was constructed, designated on the map filed as Ditch, No. 1, for the purpose of conveying the water flowing in Mill Creek to Atchinson's Bar. Ortman first commenced the building of the ditch, and constructed it only a few rods. It was afterwards extended by the miners in that locality to the claims on Atchinson's Bar. It appears, when first located, to have been used as common property. No charge was ever made for the waters it conveyed, and the miners indiscriminately repaired the ditch and took the water as they required it to wash their dirt. It was not reputed or known to be the exclusive property of any particular person, though, from the testimony, Ortman was the first to commence its excavation. Ortman and all others have long since abandoned the use of the first ditch.

In January, 1852, the defendants took up the waters of the creek for milling purposes, and erected a saw mill, which they have owned ever since, and used the same from time to time. In 1853, Louis Duhamel, with two others, commenced the construction *of a second ditch*, marked Ditch, No. 2 on the map, at a point above defendant's mill-pond, and higher up the stream, by means of which they diverted water of the creek to the same mining claims as the first ditch did. Duhamel & Co. used the water which their ditch afforded at such times as the defendants were not engaged in running their mill, but desisted whenever the defendants had use for the water. The evidence shows that

Duhamel & Co. recognized and acquiesced in the prior rights of
defendants to the water of this creek.   Sometime in the year
1853, Duhamel & Co. sold the ditch to the plaintiffs, by which
they acquired all the rights and privileges possessed by Duhamel
& Co. and have since that time used the water for mining.   The
defendants, in the fall of 1856, constructed a third ditch, still
higher up the stream, and above the last mentioned Ditch, No. 2
of the plaintiff, through which they diverted all the water ordin-
arily flowing in the creek, and conveyed it to near the same min-
ing claims as the other two ditches, which water they disposed
of to the miners.

   We presume that it is not to be doubted that the defendants,
having first appropriated the water for their mill purposes, are
entitled to it to the extent appropriated, and for those purposes
to the exclusion of any subsequent appropriation of it for the
same or any other use.   We hold the absolute property in such
cases to pass by appropriation as it would pass by grant.

   But another and different question arises, and that is, to what
extent does this power or right go ?   The measure of the right,
as to extent, follows the nature of the appropriation, or the uses
for which it is taken.   The intent to take and appropriate and
the outward act, go together.   If we concede that a man has
right by mere priority to take as much water from a running
stream as he chooses, to be applied to such purposes as he
pleases, the question still arises, what did he choose to take ?
And this depends upon the general and particular uses he makes
of it.   If, for instance, a man takes up water to irrigate his
meadow at certain seasons, the act of appropriation, the means
used to carry out the purpose, and the use made of the water,
would qualify his right of appropriation to a taking for a specific
purpose, and limit the quantity to that purpose, or to so much as
necessary for it.   So, if A erects a mill on a running stream, this
shows an appropriation of the water for the mill ; but, if he suf-
fers a portion of the water, or the body of it, after running the
mill, to go on down its accustomed course, we do not see why
persons below may not as well appropriate this residuum as he
could appropriate the first use.   The truth is, he only appropri-
ates so much as he needs for the given purpose.   It may be true,
as the counsel has ingeniously argued, that he may change the

Ortman *et al. v.* Dixon *et al.*

use, and even the place of using; but this concession does not help the argument, for the question is not how he may use his own, but what is his own ?

The principle is not materially different when applied to the fact that the ditch of defendant was built above plaintiff's mill, and the water diverted so as to be carried out of the old channel or course; for, upon the ground suggested, plaintiff was only entitled to the water for the purposes of the mill. He was entitled to all, whenever all was necessary for the mill; but whenever the mill did not need or could not use it for its operations, the defendant could use it for his purposes. It is not a question of priority, as to two classes of appropriators; for we cannot draw any distinction between the mill owner and the miner. But it is a question between claimants of the same article—each claiming a part. There is no real conflict of title—the latter only claiming what is left by the former, and what the former has not taken. The mistake of the argument of Appellants' counsel is, in assuming that the mill owner had appropriated all of this water, and, therefore, could use all for any other purpose. But the finding is, and we assume the proof, too, that he only appropriated so much as was needed for running his mill. It is as if the paramount proprietor had made him a grant of so much water as was so needed. When the Respondent's predecessor located his ditch, this was the beginning of his right. The Appellant could not impair this right.

It might be argued with great force that the mill owner was not entitled by erecting his mill and dam to the water *in specie,* and as a commodity to be taken out and sold; that he is only entitled to its use as a motive power; that it would lead to injurious consequences to hold that a man erecting a mill and dam on a large stream of running water, could use it as long as he chose and then divert it from ditches below; that the right to water comes from the appropriation, and that appropriation is taking with the intent to apply to the uses of the person taking; and there may be as well an appropriation of a limited quantity, or for a limited purpose—an appropriation of a mere use as an appropriation of the water as property for sale. But it is not necessary to go to this length for any purpose of this decision. It is enough to hold that this appropriation, according to the find-

ing of facts, was not an appropriation of all this water as the property of the Appellant; but only an appropriation of so much as necessary for the mill; and that the Appellant, after the claim to this residuum had attached by the plaintiff's appropriation, could not enlarge his right at the expense of the Respondent's rights already vested.

We take the facts as they are found by the Court below. It is admitted by the counsel that the proofs are conflicting; and we do not usually interfere in such instances.

Judgment affirmed.

FIELD, J. having been counsel in the Court below, did not sit in the case.