[Sac. No. 200.   Department One.—May 25, 1897.]

MANUEL P. CARDOZA ET AL., APPELLANTS, v.
JAMES W. CALKINS ET AL., RESPONDENTS.

WATER RIGHTS—APPROPRIATION BY DITCH—PRIOR POSSESSION—DIVERSION
—INJUNCTION—APPEAL—FINDINGS AGAINST EVIDENCE.—In an action
to enjoin the diversion of the waters of certain gulches, where the evi-
dence showed, without substantial conflict, that plaintiffs were in the
actual and peaceable enjoyment and possession of all the waters of the
gulches through their ditch at the time of defendants' diversion thereof,
and disclosed no better right in the defendants, the prior actual posses-
sion of the plaintiffs is sufficient to entitle them to an injunction as
against the defendants, and findings against the plaintiffs, and in favor
of the defendants, will be set aside upon appeal as being against the
evidence.

ID.—INSUFFICIENT APPROPRIATION BY NOTICE—NONCONSTRUCTION OF DITCH
—IMPROPER DIVERSION.—A notice of appropriation of the waters of the
gulches in controversy by the grantor of defendants, which does not ap-
pear to have been posted, though filed and recorded, and which stated
an intention to divert the waters by means of a ditch for mining pur-
poses, and specified the point of intended diversion, but was never fol-
lowed by the construction of the proposed ditch, nor by any attempt at
user of the waters for eight or ten years after the filing of the notice,
when the waters were diverted only in a fugitive manner by tapping
plaintiffs' ditch within one or two years before the commencement of
the action, is insufficient to establish any right in the waters in favor
of the grantor of defendants, as against the prior possession and user of
the waters by the plaintiffs and their grantor, and a subsequent diversion
of the waters of the gulches by flumes erected by the defendants within
thirty days from the commencement of the action confers no rights as
against the plaintiffs.

ID.—EVIDENCE—MOTION TO STRIKE OUT NOTICE.—Where the notice of
appropriation by defendants' grantor was received in evidence, but was
not followed by proof of the appropriation proposed to be made there-
under, a motion to strike it out should be granted.

ID.—ATTEMPT TO ADJUST CONTROVERSY—EFFECT UPON TITLE.—The fact
that one who held under the grantor of plaintiffs, and that plaintiffs
after their purchase, made efforts amicably to adjust the claim made by
the grantor of defendants under the notice of appropriation, does not of
itself establish any right in the latter, nor impart any validity to his
claim which it did not otherwise possess.

APPEAL from a judgment of the Superior Court of
Siskiyou County, and from an order denying a new
trial.   J. S. BEARD, Judge.

The facts are stated in the opinion of the court.

*James F. Farraher*, for Appellants.

*Warren & Taylor*, for Respondents.

VAN FLEET, J.—The action involves the right to the use of the waters of two gulches, known respectively as "Heybrook Gulch" and "Barker Gulch," tributary to Greenhorn creek, in Siskiyou county.

The complaint alleges the ownership in plaintiffs and their predecessors for upward of forty years of a ditch known as the "Cornish & Co." ditch, which taps said Greenhorn creek, and in its course along the bank of said creek crosses the two gulches named and takes the waters therefrom; that the carrying capacity of said ditch is three hundred inches, measured under a four-inch pressure, and that by means thereof plaintiffs and their predecessors have, during said period and down to the interference of the defendants, appropriated from said creek and said gulches, and devoted to a beneficial use, that quantity of water, which ordinarily included all of the waters of said two gulches; that the plaintiffs' right includes the use of the waters of said creek every day between the hours of 6 o'clock P. M. and 6 o'clock A. M., and the waters of said gulches all of the time, both day and night; that in January, 1895, within thirty days prior to the bringing of the action, and at a time when there was less than three hundred inches of water available to plaintiffs from said source, defendants without right, by means of flumes, etc., diverted the waters of said gulches from plaintiffs' ditch to their own use, and have since continued so to do, and refuse to permit plaintiffs to restore said waters to said ditch.

In a separate count the complaint sets up a prescriptive right in plaintiffs to the use of said waters.

The prayer is for an injunction. The answers deny plaintiff's right, by appropriation or otherwise, to the waters of said gulches, and set up in defendants Smith and Harrison a right to the waters of Heybrook gulch, and in the defendants Calkins and Plummer the right to the waters of Barker gulch.

The court found in plaintiffs the ownership of the ditch as alleged, and an exclusive right to the waters of Greenhorn creek and the said gulches "from the hour of 6 o'clock P. M. of each day to 6 o'clock A. M. of the following day," but found "that the use of the waters of Heybrook and Barker gulches has never been appropriated, held, or used by plaintiffs or their predecessors in interest, to wit, Morris, Renner, Trustee, and Thomas Orr, as a right during the daytime—that is, between the hours of 6 o'clock A. M. and 6 o'clock P. M., since the construction of said Cornish & Co. ditch. But the waters of said gulches have been used by the miners in main Greenhorn creek and said gulches during the day for many years last past. It further found that the defendant Smith had, during the month of January, 1895, diverted the waters of Heybrook gulch as alleged, and that during said month defendants Calkins, Plummer, and Harrison had diverted the waters of Barker gulch, but that such diversion was only during the daytime and was not wrongful as against plaintiffs. It also found against any prescriptive right in plaintiffs.

Judgment was entered for the defendants. Plaintiffs appeal from the judgment and from an order denying them a new trial, contending mainly that the findings are against the evidence.

The evidence as presented in the record is not as specific and satisfactory on behalf of either party as might be wished. On behalf of plaintiff it shows that one Burgess built the Cornish & Co. ditch in 1852, and by means thereof took and appropriated to a beneficial use all the waters of main Greenhorn creek and its tributaries, including the two gulches in dispute, when the ditch would hold them, which it would at all ordinary times, and when not he took all that the ditch would carry, which was about three hundred miner's inches; and during the time Burgess owned the property he kept the waters of the creek and these gulches running in the ditch all the time, both day and night.

Burgess sold out in 1856, but to whom does not appear, and the subsequent ownership of the ditch and water right, and the extent of the use of these waters intervening 1856, and down to about 1879 or 1880, is not definitely disclosed, although the evidence indicates that it was in continuous use during the mining season throughout all these years. Cornish, after whom apparently the ditch came to be known, is the next owner mentioned in the record, but when he became such is not shown. One Thomas Orr bought from Cornish, but the date of the latter's purchase is not given, and the evidence indicates that Orr did not acquire by his purchase the full extent of water right appropriated and exercised by Burgess, at least, so far as the waters of Greenhorn creek are concerned; that as to the latter it was limited to the night waters. But the evidence shows without substantial conflict that during all the time Orr owned the property, which was at least from 1879 or 1880 down to 1892, the waters of these gulches was diverted by and ran into the Cornish ditch, and was appropriated by Orr and his lessees, both day and night, without objection or material interruption by anyone.

In March, 1892, Orr conveyed his interest in the ditch and water right to one Charles Bohnert, the property being described in the deed as "that certain ditch taking in the waters from the main Greenhorn creek and the gulches adjacent thereto, and conducting the same to the north fork of Greenhorn creek, together with the flumes, taps, and reservoirs connected therewith, and formerly known as the Cornish & Co. ditch, together with the right to all the water in main Greenhorn creek, naturally flowing therein from 6 o'clock P. M. to 6 o'clock A. M. of each and every day throughout the year. . . . . Also all the waters flowing down all the gulches across which the said ditch is built."

In January, 1893, Bohnert made a contract of sale and deed in escrow of the ditch and water right to the plaintiffs, wherein the property is described substan-

tially as in the deed from Orr to Bohnert, and under this contract the plaintiffs have since been in possession of and were holding the property at the commencement of the suit. During the ownership of both Bohnert and plaintiffs the disputed waters have been, as theretofore, taken and diverted through the Cornish ditch, both day and night, until January, 1895, when the defendants diverted the same therefrom in the manner alleged.

The evidence on the part of the defendants was to the effect that in June, 1882, one Austin Hawkins filed and recorded a notice stating that he appropriated the waters of Heybrook and Barker gulches "for mining purposes, and to mine the claim situated on said Greenhorn creek known as the Clark and Comstock placer mine." The notice stated that he intended to divert said waters by means of a ditch, describing it, to be constructed, and giving the point of his intended diversion. No ditch, however, was ever built, nor did it appear that the notice of appropriation was ever posted. Hawkins testified: "I am the Austin Hawkins named in the water notice which you have read. . . . . I have used the waters some myself from those gulches, and others through me have used it at different times since the location. A year ago last fall I worked there myself. I have also given other parties consent to go and work there. They used the waters from these gulches through the Cornish & Co. ditch, that is, we took it from that ditch. I could not tell the amount of work that has been done there. I know that my sons Rob and Nort worked there one season. I used the water out of that Cornish & Co. ditch when I worked there. We did not use the water very much any one year, not to exceed two months in the year, and I can't say the number of years the water was used. . . . . The use of the waters from this Cornish & Co. ditch through me by the other persons whom I have named was without consideration. My familiarity with the Cornish & Co. ditch and my mining claim commenced about 1881, when I located the claim. The ground had previously been occupied by Chinese. This

Cornish & Co. ditch runs across a portion of my claim, and it was there when I located the claim.  The waters from Heybrook and Barker gulches ran into this Cornish & Co. ditch, and from there we took it onto our ground."

He also testified that one Tryon, while attending the Cornish ditch under Thomas Orr, applied to him at different times to get "the exclusive privilege of the day water of those gulches," which he declined to grant him; and that the winter before the suit was brought, while his boys were working on his claim, plaintiffs came to him and wanted to "make arrangements with me to allow the boys to use the night water, and let them use the day water. . . . . At that time the main ditch ran from Greenhorn creek, and the waters from these gulches ran into it.  They wanted me to make arrangements for the boys to take the night water, and to allow them to use the day water.  I was claiming the right to the use of the waters of main Greenhorn creek during the daytime.  They wanted to bring the thing around so they could get the day water. . . . .  I only claimed the day water from these gulches."

Norton Hawkins, a son of Austin Hawkins, testified: "I am not very familiar with the Heybrook gulch, but am pretty familiar with the Barker gulch; I think that during the last three years I have performed some mining work on Greenhorn; I worked there two springs on my father's claim; I used the waters from both of these gulches for mining purposes; I used it through the old Cornish & Co. ditch; the first spring I worked there two or three months, and the next spring two or three weeks, I think; the first spring I used all the water I wanted—all I could get in the ditch in the daytime; in the night-time the water went to waste."

Robert Hawkins, another son, testified: " During the spring of 1895, two railroad boys and myself worked a while on my father's claim on Greenhorn creek.  We took the water that we used from plaintiff's ditch."

Defendant Smith testified in substance: " I am one of the defendants herein; in the spring of 1895 I conveyed the waters of Heybrook gulch in a flume across plaintiff's ditch and used it down below their ditch; I had permission from Mr. Hawkins to use the waters from this gulch."

The testimony of defendant Calkins was: " Defendant J. W. Plummer and myself placed a flume in plaintiff's ditch across Barker gulch, and took the waters of said gulch under said flume and used them during the spring of 1895. We used them until the injunction stopped us. We used also a portion of the waters of Heybrook gulch by running them in an old ditch from Heybrook gulch to Barker gulch, and running them under plaintiff's ditch. The defendant Al Smith gave us the permission to use these waters from Heybrook gulch. No one gave us permission to use the waters of Barker gulch. We simply took them."

The foregoing is substantially all the evidence from the record, and we think it quite manifest that it does not support the finding of the court, above quoted, to the effect that the day waters of these gulches had never been appropriated by plaintiffs or their predecessors in interest—that is, between six o'clock in the morning and six in the evening. To our minds the evidence shows without any substantial conflict that this water had been so appropriated and was being so used long before and at the time of the interference therewith by defendants. Whether the evidence establishes a perfect title in plaintiffs to the use of the waters as against all the world need not be determined, since it unquestionably shows that plaintiffs were in the actual and peaceable enjoyment and possession of these waters at the date of defendant's diversion. Such possession was sufficient as against anyone having no better right, (*Utt* v. *Frey*, 106 Cal. 395), and defendants show no such right.

The entire basis of their claim is the right supposed to have been acquired to the water of these gulches

through the attempted appropriation by Austin Hawkins in 1882. But even if the water was open to Hawkins' appropriation at that time, which does not appear, the acts of Hawkins never amounted to a valid appropriation thereof. He failed to follow up the filing of his notice by any actual appropriation of the waters. His contemplated ditch by which to divert the water was never constructed, nor did he ever in fact take any of the water except in two or three instances, when it was diverted in a fugitive manner by tapping plaintiff's ditch. Even these attempts do not appear to have been made until some eight or ten years after the filing of his notice. He says: "I have used the waters some myself from these gulches, and others through me have used it at different times since the location." But when he undertakes to give the dates of such use, either by himself or others by his authority, it all appears to have occurred within one or two years prior to the commencement of the action, and at no time was the water diverted other than by taking it from plaintiff's ditch until the diversion made by the defendants in January, 1895.

The fact that Tryon, while holding under Orr, and that the plaintiffs after their purchase, made efforts to amicably adjust the claim of Hawkins to the use of the waters of these gulches does not in itself establish any right in the latter, nor impart any validity to his claim which it did not otherwise possess.

The diversion of the water by the defendants, being based solely upon their supposed license from Hawkins, was wholly without right, and they were, therefore, in undertaking to interfere with the possession of the waters by plaintiffs, mere trespassers; and the finding that their acts were not wrongful as against plaintiffs is without support.

The other points made require no special notice. It sufficiently appears from what has been said in discussing the evidence that the court, as the evidence stood, should have granted plaintiff's motion to strike out the

notice of appropriation made by Hawkins. The other ruling complained of was not material.

Judgment and order reversed.

Harrison, J., and Beatty, C. J., concurred.