493 P.2d 409

STATE of New Mexico, ex rel. S. E. REYN-OLDS, State Engineer, Plaintiff-Appellee,

v.

Lorenzo MIRANDA, Defendant-Appellant.

No. 9325.

Supreme Court of New Mexico.

Jan. 21, 1972.

Rozier E. Sanchez, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Chester H. Walter, Paul L. Bloom, Sp. Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

OPINION

MONTOYA, Justice.

Plaintiff-appellee State of New Mexico, ex rel., S. E. Reynolds, State Engineer, brought this action in the District Court of Socorro County, New Mexico, seeking a declaration that defendant-appellant Lorenzo Miranda had no right to use water from the Rio Grande Underground Water Basin or waters related thereto. The trial court, together with counsel for both parties, agreed that the case would turn on one legal issue, whether physical efforts of man resulting in visible diversion of water are necessary to the establishment of water

rights in the state of New Mexico. Plaintiff moved for summary judgment and, from the granting of plaintiff's motion, defendant appeals.

Across the defendant's property from east to west runs a water course called the Abo Wash, which has its source in the mountains approximately 18 miles from the Rio Grande River into which it empties. Following certain rains, water would flow intermittently through the wash, across defendant's property, and into the Rio Grande River. In earlier times, farmers would turn their stock into the wash to graze upon the tall, thick grass which grew in the wash and, in the fall season, the farmers would cut and store the grass for winter use. Sometime after World War I, a natural arroyo was formed and water flowing into the wash was naturally diverted from the wash into the arroyo. As a consequence, irrigation of the grassland began to decline. From that time until the present, the wash has diminished as a source of pasture for stock.

In 1969, defendant filed a declaration of ownership of water rights, claiming perfection thereof prior to 1907, and filed two applications to change the point of diversion, seeking to drill two water wells to be used for irrigating lands belonging to defendant.

Defendant's claims evidently are based upon the fact that his predecessors had made beneficial use of the grasses grown in and near the wash and that this would be a sufficient appropriation to entitle him to water rights in the Rio Grande Underground Basin. This contention is bolstered by testimony of two witnesses who can recall defendant's predecessors using the grass from the wash prior to 1907. However, neither witness could recall any man-made diversion of the waters from the wash, nor could defendant offer evidence of man-made diversion.

This court has not previously considered the specific question whether man-made works are essential to legally establish a water right, but we have enunciated principles which clearly state how appropriation of water to establish a water right may be accomplished. In Harkey v. Smith, 31 N. M. 521, 247 P. 550 (1926), this court held:

"It may be stated generally that, under the arid region doctrine, uncontrolled by statute, the appropriation of water is accomplished by taking or diversion of it from a natural stream or other sources of water supply, with intent to apply it to some beneficial use or purpose, and consummated within a reasonable time by the actual application of the water to the use designed or some other useful purpose. * * *

"Under this doctrine it is quite as necessary to make use of the water as it is to divert it, in fact, no appropriation can be effected without such use. The intent, diversion, and use must coincide."

In support of his contention that man-made diversion is not necessary to appropriate water rights, defendant relies upon Town of Genoa v. Westfall, 141 Colo. 533, 349 P.2d 370 (1960). There an injunction was sought to prohibit the town from diverting waters forming the source of certain springs located on plaintiff's property. The court found that the water being diverted into town wells was a tributary to the springs on plaintiff's land, and that plaintiff, by watering of cattle and domestic use, had appropriated the water for a beneficial use. Defendant in the instant case cites the following language from Town of Genoa v. Westfall, supra:

"It is not necessary in every case for an appropriator of water to construct ditches or artificial ways through which the water might be taken from the stream in order that a valid appropriation be made. The only indispensable requirements are that the appropriator intends to use the waters for a beneficial purpose and actually applies them to that use."

We believe that defendant's reliance on the Westfall case is misplaced. The Colorado court has established the dual requirements that the appropriator in-

tend to use the water, and that he actually apply it to a beneficial use in order for man-made diversion to be unnecessary to an appropriation of water. Even if man-made diversion were unnecessary, defendant would be required to show that his predecessors in interest intended to appropriate water for beneficial use. The mere cutting of the grasses would not be sufficient to manifest an intention to appropriate the water for beneficial use, nor can it be said that defendant's predecessors applied the waters to beneficial use by grazing cattle upon the grasses in the wash. These acts only manifested an intention to reap nature's bounty gratuitously provided by water flowing through the Abo Wash, not to appropriate the water itself. The lack of intention to appropriate the water in the wash is also buttressed by evidence in the record which shows that defendant and his predecessors in interest made no attempt to divert water from the arroyo into the wash when the waters flowing into the wash became diverted into the arroyo. The grazing on and harvesting of grasses does not constitute appropriation of the water in the Abo Wash.

More in point is Walsh v. Wallace, 26 Nev. 299, 67 P. 914 (1902), wherein the Nevada court faced the question whether man-made diversion was necessary to the appropriation of water. Certain parties had claimed water rights on the basis that they had cut wild grasses produced by the overflow of the Reese River. In rejecting the contention that cutting grasses and grazing cattle were sufficient to claim a valid appropriation, the court stated:

"* * *. In order, therefore, to constitute a valid appropriation of water, within the meaning of that term as understood by the decisions of this court and the laws of the state, and, as we believe, by the decisions of the courts and laws of other states in the arid region, there must be an actual diversion of the same, with intent to apply it to a beneficial use, followed by an application to such use within a reasonable time. * * *"

The above Nevada case illustrates the better rule with regard to appropriation of water rights for agricultural purposes.

 We hold that man-made diversion, together with intent to apply water to beneficial use and actual application of the water to beneficial use, is necessary to claim water rights by appropriation in New Mexico for agricultural purposes.

The decision of the trial court is affirmed.

It is so ordered.

McMANUS and STEPHENSON, JJ., concur.